IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 25-1094

A.C., a minor child by his next friend, mother, and legal guardian M.C.,

Plaintiff/Appellee

v.

METROPOLITAN SCHOOL DISTRICT OF MARTINSVILLE,

Defendant/Appellant

On Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division
No. 1:21-cv-2965-TWP-MPB
The Honorable Tanya Walton Pratt, Judge

**Appellee's Memorandum on the Effect of *West Virginia v. B.P.J. ex rel. Jackson***

## I.      Introduction

On September 19, 2025, this Court entered its Order (Dkt. 57) holding this case without oral argument pending the Supreme Court's decision in *West Virginia v. B.P.J. ex rel. Jackson,* No. 24-43 (cert. granted July 3, 2025). This Court further ordered that "[w]ithin 14 days of the Supreme Court's decision in [*B.P.J.*], the parties must file supplemental memoranda recommending how this appeal should be resolved (both as a matter of substance and as matter of procedure)." *B.P.J.* was

[1]

decided on June 30, 2026. 609 U.S. --, 2026 WL 1868739 (June 30, 2026), and appellee ("A.C.") is filing this memorandum as ordered by the Court.

As a matter of substance, following *B.P.J.*, there can be no dispute that the appellant's ("Martinsville's") exclusion of A.C. from male restrooms represents sex-based discrimination subject to heightened scrutiny under the Equal Protection Clause. This means that this Court's decisions in *A.C. ex rel. M.C. v. Metropolitan School District of Martinsville ("A.C. I"),* 75 F. 4th 760 (7th Cir. 2023), and *Whitaker ex. Whitaker v. Kenosha Unified School District No. 1 Board of Education*, 858 F.3d 1034 (7th Cir. 2017), *abrogation in nonrelevant part recognized by Illinois Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020), continue to control the outcome of this case. *B.P.J.* supports the judgment below because it confirms that excluding transgender students from sex-separated facilities and programming consistent with their gender identity is a sex-based classification subject to heightened scrutiny under the Equal Protection Clause. *B.P.J.* disposes of the argument that dominated Martinsville's briefing that only rational basis review applies. The district court properly applied the required heightened scrutiny and correctly concluded that the uncontested facts fall far short of demonstrating that Martinsville satisfied the standard.

This Court may therefore affirm the district court on equal-protection grounds without reaching its alternative Title IX holding. But, if it chooses to reach this question, *B.P.J.*'s holding that Title IX does not prohibit schools from limiting participation in athletics based on students' birth-assigned sex does not undermine

the Title IX holdings of *Whitaker* and the district court. The Supreme Court in *B.P.J.* emphasized it was issuing a narrow decision based on the unique context of school sports, where it was undisputed that sex-separation can be justified by "inherent physical differences relevant to athletic performance" and where participation is "zero sum" so the inclusion of some students necessarily results in the exclusion of others. 2026 WL 18868739, at *3, *10. By contrast, here, the evidence shows that separating restrooms by sex assigned at birth is not substantially related to an important governmental interest and restroom usage is a necessity for all students, not a zero-sum educational opportunity only available to some.

As a matter of procedure, this Court should schedule oral argument and affirm the decision below. Nothing in *B.P.J.* justifies remanding the case to the district court to reconsider its decision and prior determination of uncontested facts. Further, A.C. does not believe supplemental briefing is necessary given that the equal protection holding of *B.P.J.* requiring intermediate scrutiny is consistent with the arguments A.C. has made throughout this case, including in his briefing in this Court. Martinsville has had ample opportunity to respond to these arguments. Instead, the case should be set for oral argument. However, if the Court desires supplemental briefing, A.C. proposes that the parties be provided 30 days to file simultaneous supplemental briefs.

II.   **B.P.J. confirms that Martinsville's restroom policy is subject to heightened scrutiny and disposes of the primary equal protection argument advanced by Martinsville**

In *B.P.J.* the Court addressed two state laws that prohibited persons identified

[3]

at birth as male, including transgender females, from participating on girls' or women's school sports teams. 2026 WL 1868739, at *6. The plaintiffs, transgender female athletes, challenged the laws as violating both equal protection and Title IX.

In upholding the statutes against the equal protection claim, the Supreme Court recognized that the laws "make a sex-based classification that triggers intermediate scrutiny." *Id.* at *10. This required that the laws be "subject to what is known as intermediate scrutiny: Sex-based classifications are permissible only when the classification is substantially related to an important government objective." *Id.* (cleaned up) (citing to, *inter alia, United States v. Virginia*, 518 U.S. 515, 532-33 (1996)).

In confirming that heightened scrutiny applies, *B.P.J.* disposes of Martinsville's main argument before this Court. Martinsville spends much of its initial brief in this Court arguing that the holdings of *Whitaker* and *A.C. I* were overruled, *sub silentio*, by *United States v. Skrmetti*, 605 U.S. 495 (2025), and that only low-level, rational basis, scrutiny should be utilized to assess the restroom ban. (*See* Appellant's Br. at 15-25, 28-33). In *Skrmetti* the Court held that a ban on gender-affirming medical care for minors did not discriminate based on sex, but on the basis of age and medical procedure, thus subjecting it only to rational basis scrutiny. *Id.* at 514, 522. Martinsville claims that this holding somehow means that the discrimination inherent in its restroom policy is not based on sex. (Appellant's Br. at

[4]

15-20).[1] In replying to this argument, A.C. pointed out that this Court had already recognized that *Skrmetti* did not affect the validity of *Whitaker* as in the former case, "the school district's classification was sex-based because assigning a bathroom based on a child's sex unquestionably separates the sexes into two groups. This is an unremarkable conclusion." *K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 121 F.4th 604, 617 (7th Cir. 2024).

Martinsville's argument clearly does not survive *B.P.J.* Rather, *B.P.J.* ratifies the "unremarkable conclusion" of *A.C. I* and *Whitaker* and confirms that Martinsville's policy is sex-based discrimination that must be subjected to intermediate scrutiny. Therefore, although the parties spilt an enormous amount of digital ink in their briefs arguing about the appropriate level of scrutiny demanded here by equal protection, *B.P.J.* resolves the question, if it was ever in doubt.

III.  ***B.P.J.*'s equal protection holding does not abrogate or affect the validity of *A.C. I* or *Whitaker* and does not undermine the district court's conclusion that Martinsville's policy fails heightened scrutiny**

The district court correctly applied the requisite heightened scrutiny and correctly held that the uncontested evidence demonstrates that Martinsville failed to meet its burden. Nothing in *B.P.J.* alters or affects this Court's prior jurisprudence or the district court's assessment of the uncontested facts and its conclusion in this case.

---

[1]     As A.C. pointed out in his brief (Appellee's Br. at 22), Martinsville's argument was made despite the fact that it conceded in its brief that its rule created a facial classification based on sex as "[s]tudents who wish to use restrooms consistent with gender identity . . . cannot use a multi-use restroom matching their gender identity if it is inconsistent with their biological sex" (Appellant's Br. at 16-17).

[5]

The Court in *B.P.J.* ultimately held that West Virginia and Idaho's exclusion of transgender girls from girls' teams survived heightened scrutiny because "limiting women's and girls' sports to biological females [] is substantially related" to "the interests in safety and competitive fairness," which "are important for purposes of equal protection." 2026 WL 1868739 at *11. In reaching that conclusion, the Supreme Court emphasized that its decision was driven by the unique "sports context." *See id.* at *12 ("the sports context is again crucial"); *id.* ("[i]n the distinctive sports context"); *id.* at *13 ([e]specially in the sports context); *id.* ("[p]articularly in the sports context"); *id.* at *14 ("[i]n the sports context"); *id.* at *16 (emphasizing "the nature and reality of sports").

Specifically, "[i]n the sports context . . . everyone agrees that the States may maintain separate women's and men's teams—in other words, that the States may make distinctions based on sex—because of the inherent physical differences between women and men." *Id.* at *12. In the sports context, it was uncontested that schools could rely on group-based generalizations even if they are not true for all individuals. *See id.* And "[s]ports are highly competitive and generally zero sum," which creates a dynamic in which "[e]very athlete who makes a team takes a roster spot from another athlete." *Id.* at *16.

None of those unique features of sports applies to the use of school restrooms. Restrooms are not a competition and are not a "zero sum game." Although there is an important governmental interest in protecting students from "exposure of their bodies to the opposite sex," allowing transgender students to use restrooms consistent

[6]

with their identity "does not implicate the interest in preventing bodily exposure, because there is no such exposure." *A.C. I*, 75 F.4th at 773. "Common sense tells us that the communal restroom is a place where individuals act in a discreet manner to protect their privacy and those who have true privacy concerns are able to utilize a stall." *Whitaker,* 858 F.3d at 1052.

Thus, in the decision below, the district court applied the same heightened-scrutiny standard used in *B.P.J., A.C. I*, and *Whitaker,* assessed the uncontested evidence, and concluded that Martinsville "fail[ed] to provide an exceedingly persuasive justification for their discriminatory restroom policy." (Appellant's Short Appendix ["S.A."] at A18). After all, it is uncontested that no student ever complained about A.C.'s use of the boys' restrooms and there was no showing that privacy interests were threatened by A.C.'s presence in the boys' restrooms. (*Id.* at A18-A19). As the district court concluded, based on the uncontested evidence, "[t]he privacy concerns addressed by the School district are hypothetical and do not reflect a genuine governmental objective." (*Id.* at A18). *B.P.J.*'s application of heightened scrutiny in the unique context of sports does not alter the law that the district court properly applied to assess the equal protection claim; it affirms the scrutiny applied by the district court. Nor does *B.P.J.* change or influence the uncontested facts in this case. The government interests recognized in *B.P.J.* are clearly inapplicable here. The district court's grant of summary judgment to A.C. on his equal protection claims should be affirmed.

## IV.     *B.P.J.*'s Title IX holding does not undermine the district court's ruling

Given that *B.P.J.* clearly does not cast doubt on this Court's equal-protection holdings in *Whitaker* and *A.C. I*, the district court's judgment may be affirmed on that basis alone and there is no need for this Court to address the Title IX claim. Should it choose to do so, however, *B.P.J.* does not undermine this Court's previous conclusion that excluding a transgender boy from the boys' restrooms also violates Title IX. As with its equal protection holding, *B.P.J.*'s Title IX holding was based on the unique sports context and does not abrogate this Court's prior application of Title IX to restrooms.

In *A.C. I* this Court rejected the notion that the word "sex" in Title IX and in the regulation authorizing sex-separated restrooms, 34 C.F.R. § 106.33, refers only to so-called "biological sex." By contrast, the Supreme Court in *B.P.J.* held that the word "sex" in Title IX statutory text and athletic regulations refers to "biological sex," "particularly in the sports context." 2026 WL 1868739, at *7. That is because Title IX and its regulations allow for "separate sports teams precisely because of the biological differences between the sexes—namely, the inherent physical differences between biological women and biological men." *Id.* at *8; *see id.* at *34 n.14 (Sotomayor, J., concurring in the judgment in part and dissenting in part) (noting that the majority's definition was limited to the sports context); *id.* at *36 (Jackson, J., concurring in the judgment in part and dissenting in part) (same). But the reasons *B.P.J.* gave for defining "sex" as "biological sex" in the context of sports simply do not apply to restrooms, which, unlike sports, can be separated by students' gender identity and expression as opposed to their unseen chromosomes and genitalia without violating

[8]

the school's interests.

Even if "sex" means the same thing in the restroom context as it does in the context of competitive sports—an issue that this Court need not reach or address—*B.P.J.* still does not undermine the prior conclusions of this Court and the district court's conclusion that excluding A.C. from the boys' restrooms violates Title IX. As in *B.P.J.*, there is no dispute that excluding transgender students from restrooms consistent with their gender identity is disparate treatment "on the basis of sex" under any definition of the term. *See B.P.J.*, 2026 WL 1868739, at \*19 (Gorsuch, J., concurring). The critical question in *B.P.J.* and in this case is whether that disparate treatment on the basis of sex constitutes "discrimination" under the statute. *See id.*

The term "discrimination" in Title IX refers only "to distinctions or differences in treatment that *injure* protected individuals." *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 59-60 (2006) (emphasis added) (interpreting Title VII but citing, *inter alia, Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005), which interpreted Title IX); *see also A.C. I,* 75 F.4th at 769 ("[W]e ask whether our three plaintiffs are suffering *negative consequences* for behavior that is being tolerated in male students who are not transgender.") (emphasis added) (internal parenthetical omitted); *Whitaker*, 858 F.3d at 1049 (restroom policy "*punishes* [a transgender] individual for his or her gender non-conformance") (emphasis added).

In *B.P.J.* the Court concluded that excluding transgender girls from girls' teams did not constitute unlawful discrimination because of a unique statutory provision that specifically allows for "reasonable provisions considering the nature of

[9]

particular sports." *See* Educ. Amends. of 1974, Pub. L. No. 93-380, § 844 ("Javits Amendment"). The Court in *B.P.J.* concluded that because of the unique features of sports, the Javits Amendment's authorization of sex-separated teams necessarily authorizes schools to exclude some students from athletic participation. Once again, the Court explained that "because sports are generally zero sum," allowing one athlete "to compete on a girls' team necessarily displaces or disadvantages" another athlete. 2026 WL 1868739, at *8. "That hard reality of sports cannot be ignored or swept under the rug. On the contrary, that reality must and does inform interpretation of the term 'reasonable' in the Javits Amendment." *Id.* Thus, "[t]he Title IX [athletics] regulations guarantee 'equal athletic opportunity.' The regulations cannot and do not guarantee every student a spot on a team's roster." *Id.* at *9. For all these reasons, as Justice Gorsuch explained, "[i]t is a mistake to assume that, just because firing someone in part because of his biological sex amounts to unlawful discrimination in violation of Title VII, sponsoring a single-sex sports team limited to biological women or girls must also amount to unlawful discrimination in violation of Title IX." *Id.* at *19 (Gorsuch, J., concurring).

Title IX's treatment of restrooms is entirely different. Unlike with sports, there is no separate statute authorizing special rules for restrooms or exempting them from Title IX's prohibition on "discrimination." And, while Title IX authorizes nine specific exceptions to its general prohibition on sex-based discrimination, *see* 20 U.S.C. § 1681(a)(1)–(9), restroom usage is not among them.

[10]

Nor is discrimination with respect to restrooms authorized by 20 U.S.C. § 1686, which allows covered entities to "maintain[] separate living facilities for the different sexes." Although not statutorily defined, "living facilities" does not include restrooms. This is clear from the only regulation enacted to implement § 1686, now codified at 34 C.F.R. § 106.32, which pertains specifically to housing. See Nondiscrimination on the Basis of Sex in Education Programs and Activities Receiving or Benefitting from Federal Financial Assistance, 40 Fed. Reg. 24127, 24141 (June 4, 1975) (identifying the regulation as implementing, inter alia, § 1686).[2] This interpretation is consistent with common parlance: no one entering a restroom would refer to themselves as entering a living facility.

By contrast, 34 C.F.R. § 106.33, which specifically concerns "toilet, locker room, and shower facilities," was enacted to implement not § 1686 but §§ 1681 and 1682. See Nondiscrimination on the Basis of Sex in Education Programs and Activities Receiving or Benefitting from Federal Financial Assistance, 40 Fed. Reg. 24127, 24141 (June 4, 1975) (identifying the regulation as implementing Sections 901 and 902 of the Education Amendments Act of 1972, now codified at 20 U.S.C. §§ 1681 and 1682). But A.C. does not challenge the existence of sex-separated restrooms; he challenges only his exclusion from the sex-separated restroom matching his gender identity. And the regulatory allowance for sex-separated restrooms does not override—indeed, *could not* override—Title IX's general prohibition on

---

[2]    And this use of the phrase "living facility" to refer specifically to dwelling units appears to be consistent with other uses of the phrase throughout the United States Code. *See, e.g.*, 6 U.S.C. § 321a(b)(4) (institutional living facility); 12 U.S.C. § 1715w(b)(6) (assisted living facility); 42 U.S.C. § 8013(c)(1) (independent living facility).

[11]

discrimination. *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 618 (4th Cir. 2020) ("Grimm does not challenge sex-separated restrooms; he challenges the Board's discriminatory exclusion of himself from the sex-separated restroom matching his gender identity. And the implementing regulation [that is, 34 C.F.R. § 106.33] cannot override the statutory prohibition against *discrimination* on the basis of sex. All it suggests is that the act of creating sex-separated restrooms in and of itself is not discriminatory.") (emphasis in original) (internal citation omitted).

As already discussed in connection with A.C.'s equal protection claim, restrooms (unlike sports) are not "zero sum," and do not inherently require that some students be excluded. Title IX's prohibition on sex discrimination cannot guarantee every student a spot on a sports team because of the separate statutory treatment of sports, but it can—and must—protect every student's right to use a toilet. Access to restrooms is simply an educational program to which all students must have equal access, as this Court held in both *A.C. I* and *Whitaker*. The Title IX claim in this case hinges on whether the undeniable injury to A.C. effected by that sex-based classification constitutes impermissible "discrimination." As this Court has previously recognized, and as the district court held, denying A.C. access to the male restrooms is most certainly discrimination that violates Title IX and nothing in *B.P.J.* disturbs that conclusion.

## V.    Conclusion

Therefore, as a substantive matter, *B.P.J.* does not alter the validity of the district court's decision in this case. As a procedural matter, this case should thus be

set for oral argument. A.C. believes that the memoranda filed by the parties will suffice to inform the Court of the position of the parties regarding *B.P.J.* and that supplemental briefing is not necessary. However, if the Court believes such briefing would be helpful, A.C. requests that the parties be provided 30 days to submit simultaneous supplemental briefs.

Kenneth J. Falk
*Counsel of Record*
Stevie J. Pactor
Joshua T. Bleisch
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
spactor@aclu-in.org
jbleisch@aclu-in.org

Attorneys for Appellee