IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
NO. 25-1094

_____

| | |
|---|---|
| A.C., a minor child by his next friend, mother and legal guardian, M.C., | ] Appeal from the United States<br>] District Court for the Southern<br>] District of Indiana, Indianapolis<br>] Division |
| Plaintiff-Appellee, | ] |
| | ] |
| v. | ] Case No. 1:21-cv-2965-TWP-MJD |
| | ] |
| METROPOLITAN SCHOOL DISTRICT OF MARTINSVILLE, | ] Honorable Tanya Walton Pratt,<br>]     Chief Judge. |
| | ] |
| Defendant-Appellant. | ] |

## Appellant's Supplemental Memorandum

Defendant-Appellant Metropolitan School District of Martinsville ("School"), by counsel and pursuant to this Court's September 19, 2025, Order (Dkt. 57) and FED.R.APP.P. 32(c)(2), respectfully submits its Supplemental Memorandum recommending how this appeal should be resolved in light of *W. Virginia v. B.P.J. by Jackson*, 609 U.S. ____, 2026 WL 1868739 (U.S. June 30, 2026) ("*BPJ*").

This Court questioned the viability of *Whitaker v. Kenosha Unified School District No. 1 Board of Education*, 858 F.3d 1034 (7th Cir. 2017) ("*Whitaker*"), and *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 683 (2024) ("*Martinsville*"), in light of *United States v. Skrmetti*, 605 U.S. 495 (2025). *See D.P. by A.B. v. Mukwonago Area Sch. Dist.*, 2025 WL 1659279 (7th Cir. June 12, 2025), *reh'g granted and opinion vacated*, No. 23-2568, 2025 WL 1794428 (7th Cir. June 30, 2025), *dismissed as moot*, No. 23-2568 (7th Cir. Aug. 26, 2025). *BPJ* amplifies these doubts. Judgment for the School is now proper.

1

## I. Substantive Recommendations

### a. *Whitaker* and *Martinsville* conflict with *BPJ* in at least three ways.

#### i. Contrary to *BPJ, Whitaker* and *Martinsville* rejected the understanding that "sex" means "biological sex" under Title XI.

This Court in *Martinsville* challenged the School's interpretation of "sex" "as something assigned at birth or a function of chromosomal make-up," holding "Title IX does not define sex." *Martinsville*, 75 F.4th at 770 ("There is insufficient evidence to support the assumption that sex can mean only biological sex."). But the Supreme Court, unanimous on the Title IX holding, said, "The term 'sex' in the 1972 Title IX statute, the 1974 Javits Amendment, and the 1975 Title IX regulations cannot plausibly be interpreted to refer to anything other than biological sex." *BPJ*, 2026 WL 1868739, at *7.Thus, Title IX reads, "No person in the United States shall, on the basis of [biological] sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a).

Moreover, the governing language in A.C.'s case is explicit statutory text, not principally regulatory as in *BPJ*: "Notwithstanding anything to the contrary contained in this chapter, nothing contained herein shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different [biological] sexes." 20 U.S.C. § 1686. Likewise, 34 C.F.R. § 106.33 (adopted at the same time as the sports regulation in *BPJ*, *see* 40 Fed. Reg. 24128, 24141-43) says, "A recipient may provide separate toilet, locker room, and shower facilities on the basis of [biological] sex, but such facilities provided for

students of one [biological] sex shall be comparable to such facilities provided for students of the other [biological] sex."

Finally, unlike the Javits Amendment and sports regulations in *BPJ*, there is no "reasonable provisions" or qualifying language (*i.e.*, "considering the nature of particular sports" and references to "contact sports," or "competitive skill") to navigate in the facilities context because Section 1686 and 34 C.F.R. § 106.33 contain no such language. Separate living facilities, such as restrooms, based on biological sex are permitted (if comparable) under the plain statutory (or related regulatory) text.

*Whitaker* and *Martinsville* (and A.C.'s *prima facie* sex discrimination case under Title IX) were in doubt after *Skrmetti*. *BPJ* renders them inviable.

    ii. **Central to the *Whitaker* and *Martinsville* Title IX holdings were application of Title VII sex-stereotype and gender identity cases that the Supreme Court in *BPJ* said are "not relevant."**

In *Whitaker*, this Court, as to the Title IX claim, was "guided by analogy to *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), and its holding that discrimination based on sex-stereotyping violates Title VII of the Civil Rights Act of 1964." *Martinsville*, 75 F.4th at 768 (explaining *Whitaker*). "Applying *Bostock*[*v. Clayton County*, 590 U.S. 644 (2020)]'s reasoning to Title IX," the *Martinsville* majority had "no trouble concluding that discrimination against transgender persons is sex discrimination for Title IX purposes, just as it is for Title VII purposes." *Martinsville*, 75 F.4th at 769. Doubling down, the *Martinsville*

majority said, "*Bostock* strengthens *Whitaker*'s conclusion that discrimination based on transgender status is a form of sex discrimination." *Id.*

The United States Supreme Court rejected this reasoning, "[s]tat[ing] simply, Title VII and *Bostock* are not relevant in this very different statutory and factual context." *BPJ*, 2026 WL 1868739, at *9. Sex-stereotype and gender-identity claims, recognized in Title VII (and foundational to holdings in *Whitaker* and *Martinsville*), are "not relevant" to Title XI claims post-*BPJ*.

Thus, *BPJ* removes the keystones upholding the *Whitaker* and *Martinsville* Title IX analysis, impairing the durability of these decisions.

### iii.  *Whitaker* and *Martinsville* applied "backdoor" strict scrutiny in the Equal Protection Clause analysis that *BPJ* disallows.

Intermediate scrutiny does not automatically apply to claims by transgender-identifying students challenging school policies. *See BPJ*, 2026 WL 1868739 at *14 ("In these cases, we need not definitively resolve whether rational basis review or intermediate scrutiny applies to transgender classifications."). Rather, the Court in *BPJ* found that the challenged rule met both the rational basis[1] and intermediate scrutiny standards, *id* at 14, and reiterated the proper intermediate scrutiny standard. *Id.* at 11-13. Since the scrutiny applied in *Whitaker* and *Martinsville*

---

[1] The School maintains that the rational basis test applies to A.C.'s constitutional claims. First, because A.C. raises an underinclusive challenge to the School's biological definition of sex. Appellant's Br. 19-20; Reply Br. 6, 13-14 (Dkts. 19, 62). Second, because the challenged policy—disallowing gender-identity exceptions to a sex-based rule—is not a sex-based rule. Appellant's Br. 15-20; Reply Br. 10-13. And the School rationale is rational. Appellant's Br. 28-33; Reply Br. 13-14.

exceeds the intermediate scrutiny applied in *BPJ* (and other Supreme Court precedent), these decisions must be reconsidered by this Court.

The Supreme Court's "equal protection precedents allow general classifications like those made in the West Virginia and Idaho laws so long as there is at least a substantial relationship between the classification and the State's interests." *BPJ*, 2026 WL 1868739 at 11 (citing *United States v. Virginia*, 518 U.S. 515, 533 (1996)). "As the Court has long recognized, perfection in making the necessary classifications is neither possible nor necessary." *BPJ*, 2026 WL 1868739 at 11 (quoting *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 314 (1976)) (cleaned up). "For that reason, none of [the Supreme] Court's gender-based classification equal protection cases have required that the statute under consideration must be capable of achieving its ultimate objective in every instance." *Id.* (quoting *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 70 (2001)) (cleaned up).

"Rather, under the intermediate scrutiny test that the Court applies in a variety of contexts, the validity of the regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case." *Id.* at *12 (cleaned up) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 801 (1989)). In other words, in *BPJ*, the Supreme Court explained that it judges the validity of a restriction in such a case "by the relation it bears to the general problem … not by the extent to which it furthers the Government's interest in an individual case." *Id.* (quoting *United*

*States v. Edge Broadcasting Co.*, 509 U.S. 418, 430-431 (1993)) (cleaned up); Appellant's Reply Br. at 10 (Dkt. 62).

The Court also rejected related as-applied claims in *BPJ*. 2026 WL 1868739 at *13 ("The plaintiffs' as-applied argument posits that the States' interests must justify the laws' application to a specific subclass or individual."). The Court found this to be "in essence a backdoor argument for strict scrutiny, which requires a much tighter relationship between the State's classification and the State's asserted interests." *Id.* at *13. This is improper because "as long as the relationship is sufficient as a general matter, the State is not constitutionally required to grant individualized exemptions to specific athletes or subclasses." *Id.*

The Court in *Whitaker* utilized this prohibited, individualized, as-applied standard. Explaining *Whitaker*, this Court in *Martinsville* said, "We found [the District's privacy arguments] unconvincing (more or less the opposite of 'exceedingly persuasive') because there was no evidence that A.W. was less discreet than other students while using the bathroom or that the stall doors in the bathrooms did not provide adequate privacy to all." *Martinsville*, 75 F.4th at 768. This Court in *Whitaker* cited how the transgender-identifying student has used the restroom for months without issue; and it found that "[n]othing in the record suggests that the bathrooms at Tremper High School are particularly susceptible to an intrusion upon an individual's privacy"—demonstrating the as-applied standard rejected by *BPJ*. *Whitaker*, 858 F.3d at 1052.

*Martinsville* repeats *Whitaker*'s error, noting: "[n]o students complained about A.C.'s use of the bathroom[;]" "[t]here is no evidence that any students will be exposed to A.C. or vice versa[;]" and "[c]ommon sense tells us that the communal restroom is a place where individuals act in a discreet manner to protect their privacy and those who have true privacy concerns are able to utilize a stall." *Martinsville*, 75 F.4th at 772-73 (cleaned up) (quoting *Whitaker*, 858 F.3d at 1052). It also faulted the School by saying "Martinsville has not identified how A.C.'s presence behind the door of a bathroom stall threatens student privacy." *Martinsville*, 75 F.4th at 773.

The level of scrutiny applied in *Whitaker* and *Martinsville* is precisely the "backdoor" strict scrutiny that *BPJ* rejects. As explained by the Court in *BPJ*, even if the generalized privacy purpose may have not been achieved in one particular case, a constitutional violation has not occurred. *BPJ*, 2026 WL 1868739 at *11-12 (citing *Nguyen*, 533 U.S. at 70).

## II.      Procedural Recommendations

### a.  Judgment should be entered for the School.

The Court should overrule *Whitaker* and *Martinsville* and enter judgment for the School. Here is why:

i. Title IX prohibits discrimination "on the basis of [biological] sex[.]" 20 U.S.C. § 1681. But A.C. raises Title IX gender-identity or sex-stereotype claims that *BPJ* rejects. *Compare Martinsville*, 75 F.4th at 768-70, *with BPJ*, 2026 WL 1868739, at *9. A.C., a biological female seeking access to biological male restrooms, presents no *prima facie* case of (biological) sex discrimination under Title IX.

ii. Title IX also permits biological sex segregation when "maintaining separate living facilities for the different [biological] sexes." 20 U.S.C. § 1686; *accord* 34 C.F.R. § 106.33 ("A recipient may provide separate toilet, locker room, and

shower facilities on the basis of [biological] sex, but such facilities provided for students of one [biological] sex shall be comparable to such facilities provided for students of the other [biological] sex.").

iii. The School's policy prohibits students from accessing or using "the multi-use section of a bathroom facility where the sex designation for that bathroom facility differs from the student's biological sex at birth." *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 761 F. Supp. 3d 1159, 1171 (S.D. Ind. 2025). That policy is expressly permitted by Section 1686 and 34 C.F.R. § 106.33.

iv. Rational basis scrutiny applies to A.C.'s Equal Protection Clause claims because A.C. does not challenge the School's sex-based classification separating multi-user restrooms based on biological sex. *Martinsville*, 75 F.4th at 770 (A.C. has "no quarrel" with this rule); *Martinsville*, 761 F. Supp. 3d at 1173 ("The Court does not evaluate the School District's decision to maintain sex-segregated facilities; instead, the Court solely evaluates the School District's facility access policy."). A.C. instead argues that the School's denial of access by not including "gender identity" within its definition of "sex" violates the Fourteenth Amendment. *Martinsville*, 75 F.4th at 770 (the "different" question here is whether "separate facilities for the sexes forecloses access policies based on gender identity."). Since "case law forecloses" arguments that transgender-identifying individuals are a suspect or quasi-suspect class, *Skrmetti*, 145 S. Ct. at 1832-33, the rational basis test applies.

v. Relatedly, rational basis scrutiny applies because A.C. asserts underinclusive claims in defining "sex." A.C. concedes the School's sex-segregation policy but challenges the School's definition of "sex." This is a prototypical underinclusive challenge to the School's definition of sex that is subject to rational basis review. Dkt. 62, Appellant's Reply Br. 6, 13-14 (collecting cases); *accord Skrmetti*, 145 S. Ct. at 1832-33.

vi. The School's policy survives a rational basis review. Appellant's Br. 28-33; Reply Br. 13-14 (Dkts. 19, 62). "[T]he law tolerates same-sex restrooms or same-sex dressing rooms, but not white-only rooms, to accommodate privacy needs." *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 913 (7th Cir. 2010); *see also Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 804-05 (11th Cir. 2022) (en banc) (collecting historical analysis and reasons justifying privacy protections like the School's under intermediate scrutiny); *accord, Roe v.*

*Critchfield*, 137 F.4th 912 (9th Cir. 2025) (upholding state restroom law limiting access based on biological sex and finding that evidence not needed to establish "common experience" privacy justifications under intermediate scrutiny).

vii. Even under intermediate scrutiny (which does not apply), the School's policy is constitutional. "That some students in a state of partial undress may experience embarrassment, shame, and psychological injury in the presence of students of a different sex is neither novel nor implausible." *Roe*, 137 F.4th at 925 (cleaned up) (citing *Virginia*, 518 U.S. at 550 n.19 ("Admitting women to Virginia Military Institute would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements.")); *Adams*, 57 F.4th at 804-05; *BPJ*, 2026 WL 1868739, at *12 (quoting *Michael M. v. Superior Ct. of Sonoma Cnty.*, 450 U.S. 464, 469 (1981)). Indeed, such "privacy justification is easily corroborated by common experience and circuit precedent." (Dkt. 19, Appellant's Br. 29-30 (quoting *Roe*); Reply Br. 13-14 (Dkt. 62)). The application of the School's policy to A.C. may be imperfect in A.C.'s eyes, but the School's policy is reasonably related to important governmental interests of preserving privacy in intimate facilities.

viii. In 2023, this Circuit was aligned with the Fourth Circuit (*Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020)) in conflict with the Eleventh Circuit (*Adams*), and a switch by this Court would not have eliminated the 2-1 conflict. *Martinsville*, 75 F.4th at 771. Since then, the conflict flipped. The U.S. Supreme Court in *BPJ* overruled the Fourth Circuit's reasoning (*B.P.J. by Jackson v. W. Virginia State Bd. of Educ.*, 98 F.4th 542, 556-557 (4th Cir. 2024), rests on *Grimm*). And the Supreme Court reversed *Hecox v. Little*, 104 F.4th 1061 (9th Cir. 2024), eliminating the inter-Circuit conflict with *Roe*. This Circuit is now alone and in conflict with the Ninth Circuit and Eleventh Circuit.

### b. Alternatively, this Court could order new merits briefs post-*BPJ*.

As an alternative, the Court could order a new briefing schedule for presentation by the parties of more fully develop arguments post-*BPJ* that may aid this Court's analysis and decision in this case. Appellant's Brief could be due within 30 days, Appellee's Brief due 30 days later, and Appellant's Reply Brief due 21 days after Appellee's Brief.

## Conclusion

Therefore, if new briefing is not in order, for the reasons provided in Appellant's Briefs and in this Memorandum, judgment should be entered for the Metropolitan School District of Martinsville on all claims.

Respectfully submitted,

/s/ *Jonathan L. Mayes*
Jonathan L. Mayes (#25690-49)
 – COUNSEL OF RECORD
Philip R. Zimmerly (#30217-06)
Mark A. Wohlford (#31568-03)
Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
317-684-5000   Fax: 317-684-5173
jmayes@boselaw.com
pzimmerly@boselaw.com
mwohlford@boselaw.com

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I, Jonathan L. Mayes, an attorney, hereby certify that on July 14, 2026, I caused the foregoing *Appellant's Supplemental Memorandum* to be filed electronically with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Jonathan L. Mayes*
Jonathan L. Mayes (#25690-49)
  – COUNSEL OF RECORD
Bose McKinney & Evans LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
317-684-5000   Fax: 317-684-5173
jmayes@boselaw.com

*Attorney for Defendant-Appellant*

5297518.5

11